# EXHIBIT A

## BELLSOUTH® WELCOMING REWARDS PROMOTION AGREEMENT
## GEORGIA, NORTH CAROLINA AND SOUTH CAROLINA

This Agreement, including those terms incorporated by reference, (the "Agreement") is made by and between BellSouth Telecommunications, Inc. ("BellSouth") and Subscriber as provided herein. In exchange for the mutual promises and consideration provided, the receipt and sufficiency of which are acknowledged, the undersigned Subscriber agrees to participate in the BellSouth Welcoming Rewards Promotion (the "Program") and intending to be legally bound agrees as follows:

1. Subscriber is a new BellSouth business services subscriber located in the states of Georgia, North Carolina or South Carolina, agrees to a twelve (12) month term for local service, and agrees to purchase a minimum of one (1) business line per location. Subscriber will earn a one time reward in an amount, as provided in Section 2, multiplied by the number of local exchange service lines subscribed to BellSouth per location. The reward only applies to lines that are ordered with the first order to establish BellSouth local exchange service. Participation in the Program begins on the date Subscriber commits to the Agreement and BellSouth accepts by processing and completing Subscriber's order. Depending upon the Subscriber's billing cycle, the term may begin in the current month or the month following or the billing cycle that BellSouth completes the Subscriber's order. Subscriber agrees to purchase and maintain local service with BellSouth under the terms as provided in this Agreement and those terms set forth in the "Service Agreement, Service Descriptions and Price Lists," including but not limited to terms provided at "BellSouth Service Agreements," under the "Business" link and "Service Descriptions & Price Lists," under the "General Exchange Price List" link (both which include important legal terms – see "Notice" below), and are incorporated herein by reference as if included fully herein at http://cpr.bellsouth.com/bst/product_line.htm (http://cpr.bellsouth.com/bst/product_line.htm). Service is provided subject to these terms. Subscriber agrees that it is impractical to list prices for all affected services under Sections 1 through 10 herein, that prices are provided under "Service Descriptions & Price Lists" at the respective website and this is a reasonable means of notice.

**NOTICE:** THE TERMS INCORPORATED BY REFERENCE AFFECT YOUR RIGHTS, SUCH AS REQUIRED OBLIGATIONS UNDER "ARBITRATION," "NOTICES," "CHARGES AND PAYMENT," "CREDIT CHECKS AND DEPOSITS," "INDEMNIFICATION," "DISCLAIMER OF WARRANTIES AND LIABILITY," "CHANGES TO THIS AGREEMENT" and "GENERAL EXCHANGE PRICE LIST." FOR SOUTH CAROLINA CUSTOMERS, THIS AGREEMENT IS SUBJECT TO ARBITRATION IN ACCORDANCE WITH THE SOUTH CAROLINA UNIFORM ARBITRATION ACT, SECTION 15-48-10 ET. SEQ. Subscriber can review BellSouth's terms incorporated by reference on its website or request a copy by calling BellSouth toll free at 1-866-663-7522. (Contact your local Relay Center at 711 for hearing/speech impaired disabilities.) These terms can be faxed or mailed to Subscriber upon request. In addition, copies are available during normal business hours at BellSouth Small Business Services, 1057 Lenox Park Blvd., Suite 300, Atlanta, Georgia 30319, ATTN: Contract Manager.
Subscriber must initial (or type initials for electronic submission) in all blanks.

2. Subscriber agrees to the following term and reward:-

| Eligible Lines | Reward |
|---|---|
| Minimum of one (1) line per location | $75 per first line and $50 per each additional line |

3. In the event Subscriber terminates the 12-month term, Subscriber shall pay back to BellSouth the rewards received. These charges will appear on a subsequent bill or, if applicable, on Subscriber's final bill in the OC&C section. Payment of this charge does not release Subscriber from other previous amounts owed to BellSouth as well as other termination charges owing to BellSouth.

4. Subscriber agrees to pay the applicable BellSouth prices or rates as set forth in the BellSouth "Service Descriptions & Price Lists," subject to the discounts or rewards provided under this Agreement; Subscriber acknowledges that prices or rates may increase during the term of this Agreement, but will not exceed an increase of 10% of the initial price or rate for any particular service over the term, plus increases by the annual rate of the Consumer Price Index "CPI-U, U.S. City Average, All," as set forth by the Department of the Labor, Bureau of Statistics and found at http://www.bls.gov/cpi/home.htm. Applicable taxes and fees will be based on the full tariff price of all products and services, and no taxes or fees will be added to the amount of any discount under this program. In the event of a dispute between Subscriber and BellSouth as to the correctness of one or more items appearing on the BellSouth monthly bill, Subscriber may withhold payment of *bona fide* disputed items only and payment of the remainder shall be made as provided. If Subscriber fails to pay BellSouth for services rendered by the specified due date, BellSouth shall charge Subscriber a late payment and interest charge of 3% in South Carolina, a late payment charge of 1% in North Carolina, or a late fee of $10 on all charges due and unpaid greater than $20 for regulated services and an interest charge of one and one-half (1.5%) in GA, respectively, per month as approved by government authority. The late payment and interest charges, if applicable, will be applied to that period's charges, as well as any outstanding charges and late charges that are due and remain unpaid at the time of Subscriber's next bill.

5. In the event Subscriber is switched without authorization by another carrier for business local service, Subscriber must call its BellSouth Small Business Office to continue the Program once the improperly switched account has been returned to BellSouth. If Subscriber does not return the improperly switched service to the relevant BellSouth company, the termination charge provisions of this Agreement shall apply.


→ PR INITIAL

6. Service(s) are provided "AS IS" and "AS AVAILABLE." THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED (INCLUDING ANY REGARDING MERCHANTABILITY OR FOR A PARTICULAR PURPOSE) NOT SPECIFIED HEREIN REGARDING SERVICE(S) PROVIDED OR PERFORMED AND EQUIPMENT FURNISHED, AND BELLSOUTH EXPRESSLY DISCLAIMS SAME. BELLSOUTH DOES NOT IMPLY OR EXPRESS ANY BELLSOUTH WARRANTY WHATSOEVER FOR DATA EQUIPMENT OR SERVICE(S) PROVIDED. BELLSOUTH DOES NOT AUTHORIZE ANYONE, INCLUDING, BUT NOT LIMITED TO, BELLSOUTH EMPLOYEES, AGENTS, OR REPRESENTATIVES, TO MAKE A WARRANTY OF ANY KIND ON BELLSOUTH'S BEHALF, AND SUBSCRIBER AGREES THAT SUBSCRIBER WILL NOT RELY ON ANY SUCH STATEMENT. BELLSOUTH DOES NOT REPRESENT OR WARRANT THAT THE SERVICE(S) WILL BE UNINTERRUPTED OR ERROR FREE OR FREE FROM ANY VIRUS, WORM, SPYWARE OR THE LIKE. SUBSCRIBER EXPRESSLY AGREES THAT OPERATION AND USE OF THE ORDERED SERVICE(S) ARE AT SUBSCRIBER'S SOLE RISK.

7. BellSouth shall be excused from performance and shall not be liable for any delay or damage caused, in whole or in part, by any occurrence beyond the reasonable control of BellSouth or its contractors. Such contingencies include, without limitation, war, civil disturbance, civil defense, delay in transportation, failure by suppliers to deliver equipment or services, governmental action, terrorism, acts of any third party, labor dispute, accident, fire, explosion, flood, wind, electric disturbance, connectivity, inclement weather, or other acts of God, power failure, shortage of labor or materials, or discovery of asbestos or other hazardous substances.

8. The following limitation of liability represents a material inducement of the parties to enter into this Agreement and to perform at the established prices. If additional risks or undertakings were contemplated by BellSouth, they would have been reflected in an increased price or rate or a smaller reward or discount. In contemplation of the prices, rates, rewards or discounts to be provided, Subscriber acknowledges that there is consideration for the limitation of damages and remedies set forth herein as follows:

NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED HEREIN, UNDER NO CIRCUMSTANCES SHALL BELLSOUTH BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE, ECONOMIC OR INDIRECT DAMAGES INCLUDING WITHOUT LIMITATION, LOST REVENUE, LOST PROFITS, LOST DATA, LOST CONTENT, LOSS OF SIGNAL, LOSS OF CONNECTIVITY, LOSS OF USE, OR FRAUD OR OTHER UNAUTHORIZED USE. THIS LIMITATION OF LIABILITY SHALL APPLY WHETHER A CLAIM IS BASED ON CONTRACT, WARRANTY, NEGLIGENCE, OR OTHER TORT, BREACH OF STATUTORY OR OTHER LEGAL DUTY, PRINCIPLE OF INDEMNITY OR CONTRIBUTION, OR OTHERWISE, WHETHER OR NOT THAT BELLSOUTH HAD NOTICE OF THE POSSIBILITY OF SUCH DAMAGES OCCURRING. SUBSCRIBER'S SOLE REMEDY FOR LOSS OR DAMAGE CAUSED BY OPERATION OR USE OF THE SERVICE(S) OR EQUIPMENT OR FOR DELAY, MALFUNCTION OR PARTIAL OR TOTAL NONPERFORMANCE OF ANY SERVICE OR EQUIPMENT UNDER THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION, SHALL BE LIMITED TO AN AMOUNT EQUIVALENT TO THE CHARGES PAID, OR PAYABLE, BY SUBSCRIBER TO BELLSOUTH FOR SUCH SERVICE OR EQUIPMENT FOR THE PERIOD SUCH FAILURE, DELAY OR NONPERFORMANCE OCCURRED.

9. If any provision, phrase or wording of this Agreement is held to be invalid or unenforceable, the validity and enforceability of the remaining provision or provisions shall not in any way be affected or impaired thereby. The terms of this Agreement shall be construed in accordance with the laws of the state in which service is provided, excluding its conflict of law provisions. ANY ACTION PURSUANT TO THIS AGREEMENT MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION FIRST ACCRUED. Any obligation of BellSouth and Subscriber, which by their terms would continue beyond the termination, cancellation, or expiration of this Agreement, shall survive such termination, cancellation, or expiration.

10. (a) Subscriber and BellSouth acknowledge and agree that to the extent the services to which Subscriber subscribes under this Agreement are deregulated or detariffed, all references to "BellSouth's General Subscriber Services Tariff," "BellSouth tariffs," "BellSouth's lawfully filed tariffs," or any other references to BellSouth's tariffs on file with the appropriate regulatory authority shall be deemed references to agreed contract terms and conditions identical to those set forth in the applicable tariff for services subscribed by Subscriber as such tariffs existed as of the effective date of deregulation or detariffing. Such term and conditions are incorporated by reference as if fully included herein.

(b) In the event of a conflict among those terms set forth in Sections 1 through 10 of this Agreement, the terms set forth in the "BellSouth Service Agreements," under the "Business" link and the terms set forth in the "Service Descriptions & Price Lists," as provided at http://cpr.bellsouth.com/bst/product_line.htm, the terms in Sections 1 through 10 of this Agreement and then those found in the "BellSouth Service Agreements," under the "Business" link shall control, in that order.

(c) (i) Under no circumstances may Subscriber resale or otherwise receive compensation from a third party for the subject service(s), unless previously agreed in writing by BellSouth; (ii) the service(s) are furnished subject to the condition that it will not be used for an unlawful purpose; BellSouth may discontinue service(s) or refuse to furnish service(s) when it has reasonable grounds to believe that such service is being used or will be used in violation of the law or to perpetrate any fraudulent use; (iii) Subscriber has no property rights to the telephone number or any other call number designation associated with service furnished by BellSouth; and (iv) any mathematical error(s) made by a representative of BellSouth does not constitute an offer and thus may be corrected or modified by BellSouth.

(d) This offer contains telecommunications services that are available separately. Subscriber agrees if it should desire to purchase the service(s) included in a bundle or combination of services without additional products and services, those services are available individually at prices posted at http://cpr.bellsouth.com and previously filed with the appropriate regulatory authority.


→ PR INITIAL

(e) Subscriber may migrate its services to other comparable BellSouth services under a new term under a contract period that is equal to or is greater than the remaining term of the Subscriber's existing agreement, if total eligible charges paid by the Subscriber for the new BellSouth program or service is equal to or greater than the charges paid by the Subscriber for the Subscriber's existing service under agreement, the service orders to install the new BellSouth service and to disconnect the existing BellSouth service are related and coincide, and the new BellSouth service is purchased for the same Subscriber location, unless involving a move from one location to another. Such migration will not cause termination under section 3 of this Agreement.

(f) If Subscriber selects the electronic signature option, it agrees: an electronic Agreement shall for all legal purposes be considered a "writing;" any name or symbol of Subscriber affixed to or contained in the electronic Agreement shall be deemed to be the Subscriber's valid signature expressing its intent to be bound; any electronic Agreement shall be deemed to comply with any applicable state law governing electronic signatures, electronic writings and/or electronic records; any electronic Agreement printed from files or records (including electronic files) obtained in a normal course of business shall be deemed an original and the admissibility thereof shall not be contested under any applicable best evidence rule or otherwise. Subscriber is solely responsible for taking all proper security and other procedures necessary to ensure that all transmissions of the electronic Agreements are authorized and correct. BellSouth is not responsible for any incorrect information contained in an electronic Agreement (including, without limitation, any failure to receive an electronic Agreement), and Subscriber is bound by any electronic Agreement received by BellSouth.

(g) Subscriber acknowledges that Subscriber has read and understands this Agreement and agrees to be bound by its terms. This Agreement constitutes the complete and exclusive statement of the agreement between the parties, superseding all proposals, representations and prior agreements, oral and written, between the parties relating to the subject matter of the Agreement. Acceptance by BellSouth is subject to BellSouth credit checks and other approvals. Initial blanks are for acknowledgement purposes only; failure to acknowledge does not invalidate that respective section or this Agreement. THIS AGREEMENT SHALL NOT BE ALTERED, MODIFIED, AMENDED OR SUPERCEDED IN ANY RESPECT OTHER THAN BY WRITTEN INSTRUMENT EXECUTED BY SIGNATURE BY BOTH PARTIES; ANY SUBSCRIBER CHANGES HAVE NO EFFECT; unless agreed by such a writing by BellSouth, this Agreement and any orders for service(s) that Subscriber places that includes such Subscriber changes will be processed as if the changes were not included.

(h) Subscriber understands that the signature or electronic signature below on this Agreement constitutes Subscriber's application for enrollment in the Program under this Agreement; Subscriber's application and enrollment is subject to and controlled by all terms under this Agreement. The undersigned warrants and represents that he or she has the authority to bind Subscriber to this Agreement.

| SUBSCRIBER: **Rowe Patricia S DC** | |
|---|---|
| (Full Legal Business Name) | 3575 Rutherford Road Ext # C |
| | (Business Address) |
| By signing or indicating acceptance, I acknowledge and accept all terms of the Agreement as set forth above, including all terms set forth in the "Service Agreement, Service Descriptions and Price Lists" found at http://cpr.bellsouth.com/bst/product_line.htm. (Subscriber must type in full name below for electronic submission.) | Taylors/SC |
| | (City and State) |
| By: ~~Patricia Rowe~~ DR. Patricia S. Rowe DC | 8642921961 |
| (Signature) | (Business Telephone Number) |
| Print Name  Patricia Rowe  P.A | 8642921961 |
| Title  President | (Additional Business Telephone Number(s)) |
| Date  11/08/2007 | 864-292-8580 |
| Email | |
| Representative Name / Telephone # for Questions **Daniel Goward / 8006905036** | |
| | CUID |
| Version 022006 | 2FN9BAT |